UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUN 1 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-173-GWU

TIMOTHY CLYDE STORMS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff, Timothy Clyde Storms, filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on June 12, 2001, claiming that he became disabled on December 12, 2000. (Tr. 91-3). These applications were eventually denied in a decision by an Administrative Law Judge (ALJ) on April 24, 2003. (Tr. 42-57). Mr. Storms then filed a second set of applications for DIB and SSI on June 16, 2003, which were also denied in an ALJ decision, dated November 3, 2004. (Tr. 18-33). The Appeals Council evidently declined request for review, and the plaintiff filed separate actions in this Court to appeal the decisions. In Storms v. Social Security Administration, London Civil Action No. 05-173-GWU (E.D. Ky.), the plaintiff appealed the April 24, 2003 denial decision, while in London Civil Action No. 05-188-GWU, he appealed the November 3, 2004 ALJ decision. This Court issued an order on April 20, 2005 noting that both complaints cited the same

1

Storms

date for denial of review by the Appeals Council and ordered the plaintiff to clarify the relationship between the two civil actions. The plaintiff responded that the same allegations were contained in both files along with the same onset date, and that no service of process would be necessary, and on this basis, the Court dismissed London Civil Action No. 05-188-GWU on May 6, 2005.[1]

Therefore, the only administrative action currently before the Court for review is that contained in London Civil Action No. 05-173-GWU, which covers the plaintiff's condition from his alleged onset date of December 12, 2000 to the date of the first ALJ's denial decision on April 24, 2003.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

---

[1] The defendant notes in his brief that the Commissioner consented to a proposed motion drafted by counsel for the plaintiff to vacate the judgment entered in London Civil Action No. 05-188-GWU and reopen the case for consolidation with London Civil Action No. 05-173-GWU, but this motion was never filed with the Clerk of Court. Since over one year has elapsed since London Civil Action No. 05-188-GWU was dismissed on May 6, 2005, a motion for reopening under Federal Rule of Civil Procedure 60 would be untimely. Counsel for the plaintiff had been put on notice at least since the filing of the defendant's brief on November 1, 2005, Docket Entry No. 12, that the proposed motion had not been filed with the Court.

2

Storms

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and

3

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

4

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Storms

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

6

Storms

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

At the administrative hearing conducted on February 4, 2003, the ALJ had asked the vocational expert (VE) whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 1366). He: (1) could not climb, crawl, or push/pull with leg controls; (2) could occasionally bend and stoop; (3) could not perform work at unprotected heights, around hazardous machinery, or involving exposure to temperature extremes; and (4) was limited to jobs involving no more than 1-2 step instructions and without close interaction with the public, co-workers, or supervisors. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 1366-7).

The plaintiff, a 45-year-old man with a seventh grade education and work experience as a welder, alleged disability due to the residuals from a job-related accident on December 12, 2000, in which his clothes caught on fire and badly burned the skin on his back and buttocks. He also injured a disk in his back, and

8

Storms

suffered from post traumatic stress disorder as a result of the same incident. (Tr. 110,1347). He testified that he had been able to return to work for about four months as a supervisor, although he was missing a lot of work due to his back problem. (Tr. 1343).[2] His back pain still bothered him a great deal, despite the use of pain medications and a TENS unit, and he felt that he would have to change positions every 30 to 45 minutes. (Tr. 1349, 1351). On a good day he could ride in a car five miles to see his mother, but did not drive himself. (Tr. 351).

The only examining source to give specific functional restrictions was the plaintiff's treating neurosurgeon, Dr. Harry Lockstadt. Dr. Lockstadt began treating Mr. Storms in April, 2001 for pain and stiffness in the back, and, although he noted that his skin graft had "healed up beautifully," he restricted the plaintiff's standing, walking, lifting, bending, and twisting activities due to continued complaints of pain. (Tr. 430-32). After an MRI showed some degenerative changes, and epidural injections caused side effects without providing permanent relief (Tr. 425-9) a new MRI was obtained in December, 2001 showing a focal "paracentral disc protrusion/early herniation" involving the nerve roots on the right, especially at S1. (Tr. 423). Dr. Lockstadt recommended a diskectomy (Tr. 422) which was apparently performed sometime in early 2002. On April 23, 2002, the plaintiff was still complaining of a significant amount of pain in his lower back, although his leg pain

---

[2]This was eventually categorized as an unsuccessful work attempt. The plaintiff apparently stated elsewhere that he been fired over an allegation of theft, which he indignantly denied. (Tr. 326, 592).

9

Storms

appeared to be stable and x-rays continued to show facet joint arthritis. (Tr. 420).

In terms of functional restrictions, two separate forms were completed on August 29, 2002.[3] The first limits the plaintiff to lifting no more than 20 pounds one-third of the time, standing and walking three hours in an eight-hour day, sitting three hours in an eight-hour day, never climbing, balancing, or crawling, occasionally stooping, crouching, or kneeling, and having restrictions on pushing and pulling and a need to avoid heights and moving machinery. (Tr. 439-40). The second form indicates that the plaintiff can lift 20 pounds occasionally and 10 pounds frequently, sit for four hours, and stand and walk for four hours, although he also needed to walk for 10 minutes after every 90 minutes of sitting, and would need the option of sitting or standing at will, could never climb ladders, could "rarely" twist, stoop, and crouch, and could "occasionally" climb stairs. (Tr. 441-5).

No other treating source, such as Dr. James Thomas (Tr. 571-4) or Dr. Richard Lingreen (Tr. 724-6) or one-time examining source, such as Dr. William Lester (Tr. 720-2) offered an opinion on functional restrictions. In fact, Dr. Lester recommended that a functional capacity evaluation be obtained in order to determine the plaintiff's limitations. (Tr. 722). State agency physicians reviewed only a portion of the record and found that the plaintiff's problem would diminish to less than

---

[3]Although the signature on the first form is unclear, and the second form appears to be signed by "Jim Farris for Harry Lockstadt," both the ALJ (Tr. 53) and Commissioner, Memorandum in Support of the Commissioner's Decision, Docket Entry No. 12, pp.7-8, appear to accept that these are Dr. Lockstadt's own opinions.

10

Storms

"severe" status in less than 12 months, but these opinions were given prior to Dr. Lockstadt's diskectomy. (Tr. 446, 486). Therefore, Dr. Lockstadt's opinions stand uncontradicted and, as he is a treating source, they are entitled to substantial deference.

The ALJ stated in his decision that he accepted many of Dr. Lockstadt's restrictions, but "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (Tr. 741). He did not provide any specific reason for thinking that Dr. Lockstadt was engaging in this behavior, however. The ALJ did not give any other specific rationale for discounting the treating physician's opinion.

In another part of the hearing decision, the ALJ discounted the plaintiff's credibility on several other grounds. He stated that the claimant's testimony that his pain caused him to change positions at least every 30 to 45 minutes was not supported because he displayed no evidence of pain or discomfort while testifying at the hearing. (Tr. 738). The transcript of the hearing shows that the plaintiff requested permission to stand up on at least one occasion, however. (Tr. 1347).

Given the treating relationship between Dr. Lockstadt and Mr. Storms, the lack of countervailing evidence from medical sources, and the minimal evidence that he was engaging in activities that would exceed the sitting/standing/walking restrictions given by Dr. Lockstadt, a remand will be required for additional

11

Storms

consideration of whether there were jobs that could be performed by the plaintiff under Dr. Lockstadt's restrictions.

The decision will be remanded for further consideration.

This the ___14___ day of June, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE